IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ELAINE D. STALEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. )<br>_____) | CIVIL ACTION NO. 0:05-1757-DCN-BM<br><br>**REPORT AND RECOMMENDATION** |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The record shows that Plaintiff applied for Disability Insurance Benefits (DIB) on April 26, 2002, alleging disability as of December 10, 2001 due to back pain, sleep and eye problems, right side pain, heart palpitations, and carpal tunnel syndrome. (R.pp. 52-61, 78-90, 283-284, 288-292, 297-301). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on June 17, 2004. (R.pp. 276-312). On November 17, 2004, the ALJ denied Plaintiff's claim in a written decision. (R.pp. 15-21). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 4-7).



The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).



**Discussion**

A review of the record shows that Plaintiff, who was fifty-one (51) years old when she alleges she became disabled, has a high school education with past relevant work experience as a packer and sewing machine operator. (R.pp. 15, 41, 59, 66-73, 278). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff was unable to perform any of her past relevant work, she nevertheless retained the residual functional capacity to perform a significant range of light work[1], and was therefore not disabled. (R.pp. 20-21). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to adequately explain his findings regarding Plaintiff's residual functional capacity as required by SSR 96-8p, by failing to consider all of the Plaintiff's impairments in making his RFC assessment, and by failing to correctly assess Plaintiff's credibility.

**I.**

With respect to Plaintiff's functional capacity, SSR 96-8p requires the ALJ to perform an assessment of Plaintiff's functional capacity based on the relevant evidence of an individual's ability to do work related activities, including specific functional assessments of an individual's

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

3



physical and mental capacities, since particular occupations may not require all of the exertional and non-exertional demands necessary to do the full range of work at a given exertional level. Here, the ALJ found that Plaintiff retained the residual functional capacity for a significant range of light work, (no lifting or carrying over 20 pounds occasionally and 10 pounds frequently), with restrictions of no crawling or climbing of ladders or scaffolds, no heavy gripping with either hand, and no foot pedals or other controls with the right lower extremity. (R.p. 21). Plaintiff complains that the ALJ did not comply with SSR 96-8P in making these findings, as he did not explain how he arrived at these restrictions. However, a review of the ALJ's decision shows that he did discuss the relevant evidence in reaching his findings and conclusions.

In making his findings, the ALJ specifically referenced that he had reviewed the medical records of the B-L Family Practice, which included Dr. Pennebaker; The Moore Orthopaedic Clinic, where Dr. Felmly practiced; various lab work; the records of Dr. Clark Moore and of Carolina Orthopedic Associates, P.A.; records of the Carolina Musculoskeletal Institute; records of the South Carolina Heart Center; and the records of Optometrist R.B. Antley. (R.pp. 17-18). The ALJ referenced the medical evidence reflecting that Plaintiff's hypertension was generally adequately controlled with medication, and that an eye examination on January 27, 2003 showed normal visual acuity. (R.pp. 18, 176, 259-270). Therefore, no restrictions relating to these impairments were imposed.

The ALJ also reviewed the medical evidence concerning Plaintiff's back and side pain, which reflected that Plaintiff had been complaining of back, shoulder and knee pain since at least 1997. However, the ALJ noted that medical examinations from January and March 2002 (shortly after Plaintiff alleges she became disabled) revealed only "mild" findings, with some

4



limitation of motion in her back and knees but no findings of strength or sensory deficits. (R.pp. 109-114, 142-143, 185). The ALJ further noted that Plaintiff was seen by orthopedist William Felmly on May 1, 2002, who found that Plaintiff had a normal gait, negative straight leg testing, full lower extremity motor strength, and satisfactory range of motion in her neck and upper extremities, while x-rays of Plaintiff's lumbar spine were generally unremarkable with no significant pathologies. (R.pp. 98-99). After a follow-up examination on May 8, 2002, Dr. Felmly found and opined: "[b]ased upon her clinical exam together with the MRI, it certainly looks as though she functions okay. Her subjective complaints certainly far out weigh what we clinically see on the MRI. At this point from a structural standpoint and objective standpoint, I don't see any evidence to suggest the patient needs to be out of employment. Certainly the MRI looks pristine. Her discs all look normal, the canal looks open, and it does not appear to meet acute interval change in this MRI. Recommendation is [for Plaintiff to] return to regular duties and follow-up with us...on a necessary basis." (R.p. 97).

The ALJ also references the medical records of Dr. Clark Moore, in particular the lumbar MRI performed on September 30, 2003, which showed that Plaintiff did have advanced bilateral facet joint arthropathy, bone marrow edema surrounding the facet joints, and a Grade I degenerative spondylolisthesis at L4-5; (R.pp. 226-227); as well as an MRI examination of Plaintiff's right knee on July 28, 2003, which showed chondromalacia with degenerative arthritic changes and a lateral meniscus tear. (R.pp. 223-224). However, the ALJ noted that, except for Plaintiff having a discussion with Dr. Gordon Pennebaker in March 2002 about "possibly looking for a different type of job where she does not have to do so much manual lifting", Plaintiff's treatment notes from her physicians and medical visits do not include any functional restrictions.

5



(R.pp. 18, 110). Since Plaintiff's past relevant work was medium work[2], the ALJ restricted Plaintiff to no more than light work with additional restrictions commensurate with her objective right leg findings. (R.p. 19). However, with respect to Plaintiff's claim that she could not lift more than 10 pounds,[3] the ALJ specifically found that he could "find no reference to a 10 pound weight limit" in the medical evidence. (R.p. 18).[4]

With respect to Plaintiff's carpal tunnel syndrome, the ALJ noted that Plaintiff was examined by Dr. Asif Sheikh on April 18, 2001 (8 months prior to when Plaintiff alleges her disability began), who found that Plaintiff had reduced grip strength on the right, with an EMG evaluation revealing moderately severe bilateral carpal tunnel syndrome, right worse than left. Plaintiff was advised to do strengthening and stretching exercises, and that she should consider surgery if there was no improvement. (R.pp. 91-93). A medical entry for November 16, 2001 noted that Plaintiff was still working at a packing plant and was complaining of bilateral wrist and hand pain, and reflected that Plaintiff "has a wrist splint on the right but requests one for the left as well. EMG showed moderately severe bilat CTS." (R.p. 190). On July 28, 2003, Dr. Cary Hoffman with the Carolina Musculoskeletal Institute indicated that an MRI of Plaintiff's right wrist reflected an "indirect manifestation of carpal tunnel syndrome in this patient," as was noted by the ALJ in his

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[3] A restriction of lifting no more than 10 pounds would have placed Plaintiff in the sedentary job category. Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

[4] Dr. Dunbar, who is one of the physicians Plaintiff claimed had limited her to lifting no more than 10 pounds, practiced with B-L Family Practice. (R.p. 107).

6



decision. (R.pp. 18, 222). The ALJ concluded based on this evidence that Plaintiff would be restricted to no heavy gripping with either hand and, again, the lifting restriction of light work. (R.p. 19).

A review of the ALJ's opinion in conjunction with this medical evidence does not show that he failed to comply with the requirements of SSR 96-8p. The record reflects that the ALJ gave a detailed discussion of the relevant medical and non-medical evidence, and discussed Plaintiff's ability to perform sustained work activity and the maximum amount of that activity.[5] *Cf.* Roberts v. Masanari, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); Buckholtz v. Barnhart, 98 Fed.Appx. 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002). Plaintiff's argument that the ALJ should have gone into even greater detail with respect to his findings is without merit.[6] "'[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" Delgado, 30

---

[5] Indeed, based on the medical evidence, the ALJ could have properly found that Plaintiff had an even greater functional capacity than he did. The ALJ did not even cite to the two state agency medical consultant reports, who both found that Plaintiff had the residual functional capacity for medium work with limitations only on her ability to perform heavy gripping. (R.pp. 213-220). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

[6] For example, Plaintiff complains at one point in her brief that "there is considerable evidence the Plaintiff would not be able to stand and walk the majority of the day (6) hours, which would be the standard requirement of light occupations as defined in the regulations." However, the ALJ specifically found that Plaintiff's treatment notes did not include any functional restrictions placed on her by any physician. (R.p. 18). Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to assessments of examining physicians]. The ALJ was not required to discuss restrictions which had not been placed on the Plaintiff by her physicians. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss].

7



Fed.Appx. At 548 (quoting <u>Bencivengo v. Comm'r of Soc. Sec.</u>, 241 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000); <u>Rogers v. Barnhart</u>, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002) ["The ALJ is obligated to consider only those limitations or restrictions which are alleged and/or based on relevant evidence."]. <u>See</u> <u>also</u> <u>Osgar v. Barnhart</u>, No. 02-2552, 2004 WL 3751471 at *2 (D.S.C. Mar. 29, 2004), <u>aff'd</u>, 117 Fed.Appx. 896 (4th Cir. Jan. 5, 2005).

## II.

Plaintiff's argument that the ALJ failed to properly consider and evaluate her subjective testimony is also without merit. The ALJ discussed Plaintiff's subjective testimony but found that her claims as to the extent of her pain and limitations were less than fully credible. The ALJ specifically noted Plaintiff's testimony that Dr. Pennebaker and Dr. Dunbar had told her not to lift more than 10 pounds, while there was no reference in the medical evidence to any such weight limitation. <u>Hunter</u>, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]. The ALJ further found that the objective medical evidence, which reflected an absence of hospitalizations or emergency room visits for pain, the reported effectiveness of chiropractic treatment, Plaintiff's long history of musculoskeletal complaints which were present at least four years before she stopped working, as well as the absence of prescriptions for strong pain medication, did not support the extent of pain and limitation testified to by the Plaintiff. (R.p. 18). <u>Jolley v. Weinberger</u>, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; <u>Mickles v. Shalala</u>, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the



objective and subjective evidence]; see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"].

The undersigned can find no reversible error in the ALJ's treatment of Plaintiff's subjective testimony, or in his consideration of this testimony in conjunction with the objective medical evidence of record. See generally, Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Blalock, 483 F.2d at 775 [It is the claimant who bears the burden of proving her disability].

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina
July 10, 2006

