IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Elaine D. Staley, | ) | |
| | ) | Civil Action No. 0:05-1757-DCN-BM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| | ) | |
| Jo Anne B. Barnhart, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Magistrate Judge Bristow Marchant's recommendation that this court affirm the Commissioner's decision denying plaintiff disability insurance benefits ("DIB") under the Social Security Act (the "Act"). The record includes a Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B).

### I.     PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on April 26, 2002, alleging a disability beginning December 10, 2001 due to back pain, sleep and eye problems, right side pain, heart palpitations, and carpal tunnel syndrome. (Tr. 52-61, 78-90, 283-84, 288-92, 297-301.) Plaintiff's application was initially denied and denied again on reconsideration. (Tr. 15.) Plaintiff filed a timely request for a hearing, and Administrative Law Judge William F. Pope (the "ALJ") conducted the hearing and denied plaintiff's application on November 27, 2004. (Tr. 115-21.) The Appeals Council denied plaintiff's request for review on April 28, 2005, (Tr. 4-7), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

**II.    PERTINENT FACTS**[1]

At the time of the administrative hearing, plaintiff was 53 years old. (Tr. 277.) She is a high school graduate who worked as a packer and as a sewing machine operator. (Tr. 59, 66.) Plaintiff had been under the care of Dr. Dunbar and Dr. Pennebaker, general practitioners, for back, shoulder, and knee pain since at least 1997. (Tr. 198). She started seeing Dr. Sheikh, an orthopedist, in early 2001 for hand pain. She was advised by Dr. Sheikh to do strengthening and stretching exercises for her hand pain. On December 7, 2001, plaintiff was seen by her general practitioner for sciatic back pain and was prescribed Valium to help control muscle spasms. (Tr. 115.)

Plaintiff's hip, knee, and back pain continued to worsen, and in May 2002 plaintiff was referred to orthopedist Dr. Felmly. Dr. Felmly noted that plaintiff had a normal reciprocal gait; her back showed level shoulders and a level pelvis; and her paraspinal muscles looked symmetrical without erythema, contusion, or collection. After reviewing her MRI, Dr. Felmly stated:

> Based upon her clinical exam together with the MRI, it certainly looks as though she functions okay. Her subjective complaints certainly far outweigh what we clinically see on the MRI.
>
> At this point from a structural standpoint and objective standpoint, I don't seen any evidence to suggest the patient needs to be out of employment. Certainly the MRI looks pristine. Her discs all look normal, the canal looks open, and it does not appear to meet acute interval change in this MRI.

---

[1] The magistrate judge's Report and Recommendation contains a more thorough recitation of the facts pertinent to this case, including citations to the record, and the court incorporates that recitation into this order. The facts recounted here provide a basis for the court's ruling but do not necessarily provide all relevant context.

> Recommendation is return to regular duties and follow up with us will be on a necessary basis.

(Tr. 97.) Plaintiff was referred to Dr. Felmly again on October 21, 2002 for pain in her right knee; she was prescribed a course of anti-inflammatories.

In September of 2003, Dr. Dunbar referred plaintiff to Dr. Dasgupta of the South Carolina Heart Center for an evaluation of her stress test and palpitations. Dr. Dasgupta stated that he "cannot find a cardiac source for her symptoms . . . . I will not plan to see her on a regular basis." (Tr. 260.) Plaintiff was additionally seen by optometrist Dr. Antley on January 27, 2003, and by letter dated February 25, 2003, he indicated that plaintiff's tests were normal. (Tr. 176.)

In September 2003, plaintiff was seen by a third orthopedist, Dr. Moore. Testing showed advanced bilateral facet hypertrophy, bone marrow edema surrounding the facet joints, a grade I degenerative spondylolisthesis, as well as a deep partial thickness tear of the supraspinatous tendon at the myotendonous junction. Dr. Moore's notes did not indicate any functional restrictions as a result of these findings.

### III. SCOPE OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's Report and Recommendation to which a specific, written objection is made. 28 U.S.C.A. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140 (1985). This court is not required to review, under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have

not objected. See id. at 149-50. A party's general objections are not sufficient to challenge a magistrate judge's findings. Howard v. Secretary of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir. 1991). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). This court may accept, reject, or modify the Report and Recommendation of the magistrate judge, in whole or in part, or may recommit the matter to her with instructions for further consideration. 28 U.S.C.A. § 636 (b)(1).

Although this court may review the magistrate judge's recommendation de novo, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Id. (internal citation omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if h[er] decision is supported by substantial evidence." Id. Instead, when substantial evidence supports the Commissioner's decision, this court must affirm that decision even if it disagrees with the Commissioner. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Ultimately, it is the duty of

the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

**IV.     DISCUSSION**

Plaintiff objects to the magistrate judge's evaluation of the ALJ's residual functional capacity ("RFC") assessment. Specifically, plaintiff argues that the magistrate judge did not address the ALJ's failure to consider plaintiff's capacity for sitting, standing, stooping, squatting, and bending. Plaintiff contends that it is impossible to make a determination regarding her capacity for employment without this information. Plaintiff also objects to the magistrate judge's determination that the ALJ did not err in evaluating her subjective complaints.

The ALJ determined that the claimant had the residual functional capacity to perform work with restrictions that require no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no crawling or climbing of ladders or scaffolds; no heavy gripping with either hand; and no foot pedals or other controls with the lower right extremity. According to plaintiff, the ALJ did not explain how he arrived at these restrictions.

A residual functional capacity assessment requires consideration of all relevant medical and other evidence. 20 C.F.R. 404.1545. This includes all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence. Id.

In reaching his conclusion that plaintiff had the residual functional capacity to perform a significant range of light work, the ALJ engaged in a lengthy discussion of

plaintiff's medical and subjective evidence. He detailed plaintiff's history of subjective complaints starting in 1997 and indicated that he had reviewed her treating physicians' notes. The ALJ referenced a lumbar MRI on January 21, 2002, that showed only "mild" changes with no focal disc protrusion or nerve root compression. (Tr. 17.) He noted that plaintiff's record indicates that chiropractic treatment from December 17, 2001 to February 25, 2002 resulted in improvement. (Tr. 17.) The ALJ further noted that on March 15, 2002, Dr. Pennebaker reported that plaintiff should expect waxing and waning symptoms, and that she discussed possibly looking for a different type of job that did not require manual lifting. (Tr. 17.)

The ALJ also indicated that he had reviewed Dr. Felmly's records from May 2002 for plaintiff's back and leg complaints. The ALJ quoted Dr. Felmly's conclusion that plaintiff's "subjective complaints certainly far outweigh what we clinically see on the MRI," and he noted that Dr. Felmly opined that there were no objective findings to suggest plaintiff should be out of employment. (Tr. 17.) Furthermore, in October of 2002, Dr. Felmly noted that plaintiff had a mild past injury to her lateral tibia, and recommended a course of anti-inflammatory medication and range of motion exercises. (Tr. 17.)

The ALJ discussed the findings of a lumbar MRI on September 30, 2003, which showed advanced bilateral facet hypertrophy at L4-5, bone marrow edema surrounding the facet joints and a grade I degenerative spondylolisthesis. (Tr. 17.) He also noted that an MRI of plaintiff's right knee on July 28, 2003 showed chondromalacia with degenerative arthritic changes and a lateral meniscus tear.

Additionally, the ALJ observed that an electromyogram on April 18, 2001 indicated bilateral carpal tunnel syndrome. (Tr. 17.) The examining orthopedist, Dr. Sheikh, administered an injection to the right wrist, instructed the claimant in strength and stretching exercises, and explained that surgical release could be performed if the claimant's symptoms did not improve. (Tr. 17-18.) An MRI taken two years later on July 28, 2003, revealed "small" volume joint effusion/synovitis. (Tr. 18.) No surgery has been performed on plaintiff's wrist.

The ALJ also considered plaintiff's subjective complaints of pain in her lower back, radiating down her legs, stiffness in her right knee, and pain and limitation of motion in her right shoulder. (Tr. 18.) The ALJ determined that the medical evidence in this case did establish the existence of a medically determinable impairment which was capable of producing some of plaintiff's symptoms, and he properly took the next step of evaluating the intensity, persistence, and functionally limiting effects of those symptoms to determine their effect on plaintiff's ability to work.

In making this assessment, the ALJ analyzed the treatment plaintiff was receiving for her complaints, including braces on her wrists at night. Although plaintiff testified that Dr. Pennebaker and Dr. Dunbar told her not to lift more than ten pounds, the ALJ noted that there were no weight restrictions in her treatment notes. The ALJ considered plaintiff's testimony that she has difficulty writing, opening jars, etc., because of pain in her hands, and that she has constant pain in her back and left leg that worsens with standing or walking. The ALJ noted that plaintiff used a cane only occasionally. Furthermore, he mentioned that there were no plans for surgery. The ALJ specifically

addressed the lack of any functional restrictions, including a weight limitation, in plaintiff's treatment notes.

The ALJ then stated that, considering the absence of hospitalizations or emergency room visits for pain, the purported effectiveness of chiropractic treatment, the long history of musculoskeletal complaints which were present for at least four years before the claimant stopped working, and the absence of treatment with strong prescription medication, he did not find the allegations of disabling pain and limited functional capacity to be credible.

"The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole." Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000). In reaching his conclusions about plaintiff's capacity for work, the ALJ specifically rejected plaintiff's contention that she could not lift more than 10 pounds, stating that he did not find evidence of this in the record.

In her objection to the magistrate judge's Report, plaintiff argues that it is impossible to reach a conclusion regarding residual functional capacity without assessing her abilities to stand, walk, bend, stoop, and squat. The ALJ found that plaintiff was capable of lifting or carrying no more than 20 pounds occasionally and 10 pounds frequently; no crawling or climbing of ladders or scaffolds; no heavy gripping with either hand; and no foot pedals or other controls with the right lower extremity. (Tr. 19.) Because the ALJ specifically listed those functions for which he found limitations, it follows that the ALJ did not find any limitations for the functions that were not listed. See Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003) (noting that all of the

functions the ALJ specifically addressed in the FRD were those in which he found a limitation, leading the court to believe that those functions that he omitted were those that were not limited).

After a thorough review of the entire record, this court finds substantial evidence to support the ALJ's determination that plaintiff had the residual functional capacity to perform work with restrictions that require no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no crawling or climbing of ladders or scaffolds; no heavy gripping with either hand; and no foot pedals or other controls with the right lower extremity. The ALJ supported his conclusions with details from plaintiff's medical records, and he properly weighed her subjective complaints against the evidence before him. Accordingly, this court finds substantial evidence to support the ALJ's decision.

## V.     CONCLUSION

For the reasons stated above and in the magistrate judge's Report and Recommendation, it is therefore **ORDERED** that the Commissioner's decision be **AFFIRMED**.

AND IT IS SO ORDERED.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 26, 2006**
**Charleston, South Carolina**

9